**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JAMALL ANTHONY** | **CIVIL CASE** |
| **VERSUS** | **NO. 24-806** |
| **OCCIDENTAL CHEMICAL CORPORATION** | **CONSENT** |

**RULING AND ORDER**[1]

Before the Court is the Motion for Summary Judgment ("Motion"),[2] filed by Occidental Chemical Corporation ("Defendant"), which is opposed by Jamall Anthony ("Plaintiff").[3] The matter is fully briefed, and oral argument is not necessary. Because Plaintiff has not come forward with sufficient evidence to rebut the presumption that Defendant was Plaintiff's statutory employer under La. R.S. § 23:1061, Plaintiff's exclusive remedy is for benefits under the Louisiana Worker's Compensation Act ("LWCA"), La. R.S. § 23:1032. Therefore, the Motion will be granted, dismissing with prejudice Plaintiff's claims in this case, which arise under Louisiana state tort law.

## I. BACKGROUND

This is a civil action for damages arising out of a workplace injury. According to Plaintiff's state court Petition for Damages ("Petition") and his declaration under penalty of perjury,[4] Plaintiff was employed and supervised by Turner Industries Group, L.L.C. ("Turner") to work at

---

[1] This matter was assigned to the undersigned for all purposes, including trial, final entry of judgment, and direct review by the United States Fifth Circuit Court of Appeals, pursuant to General Order 2024-02 and Fed. R. Civ. P. 73. After notice, no party declined consent. Therefore, this Ruling and Order is issued under 28 U.S.C. § 636(c). R. Docs. 7, 8, 10.

[2] R. Doc. 23. Defendant has also filed a reply memorandum. R. Doc. 29.

[3] R. Doc. 28.

[4] R. Doc. 1-2 and R. Doc. 28-2 ("Anthony Declaration" or "Plaintiff's Declaration"). Defendant's Motion does not address whether Plaintiff suffered a workplace injury. Rather, Defendant only addresses whether Plaintiff's recovery is limited to the LWCA.

Defendant's facility in Geismar, Louisiana.[5] On September 15, 2023, Plaintiff was ordered by Turner to erect scaffolding in a chlorine unit to facilitate required repairs in the unit.[6] While Plaintiff worked, his work boots were emerged in several inches of a caustic solution that belonged to Defendant.[7] Plaintiff alleges that his exposure to this "extremely caustic substance … ate through his personal protective equipment and caused extreme chemical burns and injuries to his feet," which resulted in "excruciating injuries" that required immediate and ongoing medical treatment (the "Accident").[8] Plaintiff alleges that the Accident was caused by Defendant's negligent actions and/or omissions in its failure to maintain, repair, and supervise the facility and the chemicals that injured Plaintiff, and thus Defendant breached a duty owed to Plaintiff.[9] On August 20, 2024, Plaintiff filed his Petition in Louisiana state court asserting negligence claims against Defendant.[10] On September 27, 2024, Defendant removed the case to this Court, alleging this Court's diversity subject matter jurisdiction under 28 U.S.C. § 1332.[11]

On December 11, 2025, Defendant filed the Motion, seeking dismissal of Plaintiff's claims with prejudice on the grounds that it was Plaintiff's statutory employer at the time of the Accident,

---

[5] R. Doc. 1-2, ¶¶ 5, 7-8; R. Doc. 28-2, ¶¶ 2, 8-9.

[6] R. Doc. 28-2, ¶ 4; *see also* R. Doc. 23-1, ¶ 11; R. Doc. 23-8, ¶¶ 4-5.

[7] R. Doc. 28-2, ¶¶ 5, 8 and *see also* R. Doc. 23-8, ¶ 3 (Declaration of Gary Devall, Defendant's Health, Safety, & Security Manager ("Devall Declaration") attesting that Defendant manufactures inorganic and chlorinated chemicals at the Geismar facility).

[8] R. Doc. 1-2, ¶¶ 6, 8 10.

[9] R. Doc. 1-2, ¶¶ 9-14.

[10] R. Doc. 1-2, p. 1.

[11] R. Doc. 1. Defendant adequately alleged that the parties are of diverse citizenship, as Plaintiff is a Louisiana citizen and Defendant is a New York corporation with its principal place of business in Texas. R. Doc. 1, ¶¶ 7-8 and R. Doc. 1-2, ¶ 1. Defendant also adequately established that the amount in controversy was met at the time of removal based on the nature and extent of Plaintiff's alleged injuries and treatment, *i.e.*, exposure to an extremely caustic substance that "ate" through Plaintiff's personal protective equipment and caused "extreme" chemical burns and injuries to his feet which led to "excruciating" pain and required immediate and ongoing medical intervention. R. Doc. 1, ¶ 13, citing R. Doc. 1, ¶¶ 6, 10. *See also* R. Doc. 13, p. 1 (the parties' Joint Status Report: "The amount in controversy exceeds $75,000."). Therefore, the Court has subject matter jurisdiction over this case.

and thus immune from suit pursuant to the LWCA's exclusivity provisions.[12] Plaintiff opposes the Motion,[13] and Defendant has filed a reply memorandum.[14]

## II. DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT IT WAS PLAINTIFF'S STATUTORY EMPLOYER ENTITLED TO TORT IMMUNITY UNDER THE LWCA AT THE TIME OF THE ACCIDENT

### A. Legal Standards on Rule 56 Motions for Summary Judgment

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, such that the moving party is entitled to judgment as a matter of law.[15] "A 'material' fact is one that might affect the outcome of the suit under governing law,' and a fact issue is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."[16] A party moving for summary judgment must explain the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show there is no genuine issue of material fact.[17] If the moving party carries its burden of proof, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor, *i.e.*, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to

---

[12] R. Doc. 23, R. Doc. 23-1 (Statement of Undisputed Material Facts), R. Doc. 23-2, and attached evidence at R. Docs. 23-3 through R. Doc. 23-9 (described more fully *below*). The Statement of Undisputed Material Facts contains duplicate paragraphs numbered 3 and 7. *See* R. Doc. 23-1, pp. 1-2. The second set of duplicate paragraphs will be referred to in this Ruling and Order as "¶ 3(a)" and "¶ 7(a)," respectively.

[13] R. Doc. 28, R. Doc. 28-1 (Statement of Contested Material Facts), and R. Doc. 28-2 (Anthony Declaration).

[14] R. Doc. 29 and R. Doc. 29-1 (Reply to Plaintiff's Statement of Contested Material Facts).

[15] Rule 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986).

[16] *McCullough v. Wright*, 824 Fed.Appx. 281, 284 (5th Cir. Sept. 9, 2020), quoting *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (some internal quotations omitted).

[17] *Celotex Corp.*, 477 U.S. at 322-23.

return a verdict for that party."[18] This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.[19] Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[20] Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party.[21] In resolving a motion for summary judgment, the court must review the facts and inferences in the light most favorable to the non-moving party, and the court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.[22]

"However, '[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim.'"[23] "Conclusory allegations unsupported by specific facts ... will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations ... to get to a jury without any "significant probative evidence tending to support the complaint."'"[24]

---

[18] *Anderson*, 477 U.S. at 249 (citation omitted).

[19] *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).

[20] *Celotex Corp.*, 477 U.S. at 322-23.

[21] *Little*, 37 F.3d at 1075 (citation omitted).

[22] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

[23] *Rodney v. Williams Olefins, L.L.C.,* No. 14-368, 2015 WL 5304110, at *2 (M.D. La. Sept. 8, 2015), citing *RSR Corp. v. International Ins. Co.,* 612 F.3d 851, 857 (5th Cir. 2010).

[24] *Rodney,* 2015 WL 5304110, at *2, citing *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.,* 40 F.3d 698, 713 (5th Cir. 1994) (quoting *Anderson,* 477 U.S. at 249).

**B. The LWCA**

Defendant seeks summary judgment on the ground that Plaintiff's negligence claims fail as a matter of law because Defendant was Plaintiff's "statutory employer" under La. R.S. § 23:1061, and therefore, Plaintiff's exclusive remedy is worker's compensation benefits under La. R.S. § 23:1032.

"The LWCA enacts a give-and-take between employers and employees. On the one hand, the Act furnishes employees a right to workers' compensation for personal injuries sustained 'in the course of ... employment.'"[25] "In exchange, the Act makes workers' compensation an employee's exclusive remedy against his employer."[26] "The Act's exclusive remedy provision … provides that '[e]xcept for intentional acts ... the rights and remedies herein granted to an employee or his dependent on account of an injury ... shall be exclusive of all other rights, remedies, and claims for damages.'"[27] The statute further provides that "[t]his exclusive remedy is exclusive of all claims, including any claims that might arise against [an] employer, or any principal."[28] A "principal" is defined as "any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof."[29]

---

[25] *Rolls on behalf of A. R. v. Packaging Corp. of Am. Inc.,* 34 F.4th 431, 439 (5th Cir. 2022), citing La. R.S. § 23:1031(A) ("If an employee not otherwise eliminated from the benefits of this Chapter receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated.").

[26] *Rolls on behalf of A. R.*, 34 F.4th at 439, citing La. R.S. § 23:1032(A)(1)(a).

[27] *Id.*

[28] *Id.*, citing La. R.S. § 23:1032(A)(1)(b) and La. R.S. § 23:1061(A)(1) (extending the "exclusive remedy protections of R.S. 23:1032" and the corresponding obligation for workers' compensation to "the principal, as a statutory employer").

[29] La. R.S. § 23:1032(A)(2) and *see* R. Doc. 23-2, p. 6.

Under the LWCA, "when a 'principal' hires a contractor to perform work that is 'a part' of the principal's 'trade, business, or occupation,' the principal is liable to pay workers' compensation benefits to any injured employee of the contractor."[30] "In such instances, the principal is commonly referred to as the 'statutory employer.' In exchange for the responsibility placed on statutory employers, the statute affords them immunity from tort liability to their statutory employees."[31] "Thus, a principal is immune from tort liability if the contract work was a part of the principal's trade, business, or occupation."[32] "The law further provides that a written contract establishes a rebuttable presumption of a statutory employee-employer relationship, which may be defeated by showing that 'the work being performed is not an integral part of or essential to the ability of the principal to generate the individual principal's goods, products, or services.'"[33]

**C. Arguments of the Parties**

According to the Motion and Defendant's Statement of Undisputed Material Facts ("Defendant's Statement"), which relies on the declaration made under penalty of perjury by Michael Andrews, Defendant's Director of Strategic Sourcing & Regional Purchasing ("Andrews

[30] *Rodney,* 2015 WL 5304110, at *2 , citing La. R.S. § 23:1061(A)(1), in pertinent part: "Subject to the provisions of Paragraphs (2) and (3) of this Subsection, when any 'principal' as defined in R.S. 23:1032(A)(2), undertakes to execute any work, which is a part of his trade, business, or occupation and contracts with any person, in this Section referred to as the 'contractor', for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032 and shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him….”). *See also* R. Doc. 23-2, p. 6.

[31] *Rodney,* 2015 WL 5304110, at *2, citing La. R.S. § 23:1032.

[32] *Rodney,* 2015 WL 5304110, at *2, citing *Salsbury v. Hood Indus., Inc.,* 982 F.2d 912, 913–14 (5th Cir. 1993).

[33] *Rolls on behalf of A. R.*, 34 F.4th at 439 and *Rodney,* 2015 WL 5304110, at *2, citing La. R.S. § 23:1061(A)(3) ("Except in those instances covered by Paragraph (2) of this Subsection, a statutory employer relationship shall not exist between the principal and the contractor's employees, whether they are direct employees or statutory employees, unless there is a written contract between the principal and a contractor which is the employee's immediate employer or his statutory employer, which recognizes the principal as a statutory employer. When the contract recognizes a statutory employer relationship, there shall be a rebuttable presumption of a statutory employer relationship between the principal and the contractor's employees, whether direct or statutory employees. This presumption may be overcome only by showing that the work is not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.").

Declaration"), Turner was performing work at Defendant's Geismar's facility pursuant to a Master Services Agreement ("MSA") between Defendant and Turner that became effective on February 26, 2018 and was still in effect on the date of the Accident.[34] Defendant could request that Turner perform work at the Geismar facility through agreement to Commercial Terms.[35] For the work performed on the date of the Accident, Defendant and Turner entered into Commercial Terms, also dated February 26, 2018, which were originally set to expire on February 28, 2023. However, the effective date of the Commercial Terms was extended to November 8, 2025. Therefore, the Commercial Terms were also in effect on the date of the Accident.[36] According to the Commercial Terms, Turner agreed to provide services, including: "furnishing all workers and supervisory personnel needed for the performance of plant maintenance, minor construction, turnaround work, product loading, and other types of work … as requested and authorized from time to time by the Company…."[37] Relevant here, the Commercial Terms also stated as follows:

> **14. STATUTORY EMPLOYER:**
>
> These Commercial Terms recognize that Company shall be considered the statutory employer of Contractor employees and its subcontractors who provide work or services under these Commercial Terms in accordance with Louisiana R.S. 23:1031 or R.S. 23:1061. Thus Company is to be granted the exclusive remedy protection of Louisiana R.S. 23:1032. The parties agree that the recognition of the Statutory Employer status is made pursuant to R.S. 23:1061 of the Louisiana Worker's Compensation [sic] and that Company is not the actual employer of any of the employees of contractor or any of its subcontractors and such individuals are ineligible

---

[34] R. Doc. 23-1, ¶¶ 1-3, 12; R. Doc. 23-2, p. 2; R. Doc. 23-3, ¶¶ 3-4 (Andrews Declaration); and R. Doc. 23-4 (MSA, executed by Andrews, on behalf of Defendant, and by Clayton Jumonville, on behalf of Turner). According to Andrews, the MSA remained in effect because neither party terminated or suspended it. R. Doc. 23-3, ¶ 4.

[35] R. Doc. 23-1, ¶ 4; R. Doc. 23-2, p. 3; R. Doc. 23-3, ¶ 5; and R. Doc. 23-4, p. 7, ¶ 3 (the MSA, which provides, in pertinent part: "Commercial Terms shall be deemed to have incorporated by reference all terms and conditions of the MSA… and constitute an entire binding legal agreement of the Parties with respect to the Work set forth in such Commercial Terms.").

[36] R. Doc. 23-1, ¶¶ 5-7, 12; R. Doc. 23-2, p. 3; R. Doc. 23-3, ¶¶ 5-7; and R. Doc. 23-5 (Commercial Terms, defining "Company" as Defendant and "Contractor" as Turner at p. 1 and stating an expiration date of February 28, 2023 at p. 2); R. Doc. 23-6 (First Amendment to Commercial Terms); and R. Doc. 23-7 (Second Amendment to Commercial Terms, extending effective date to November 8, 2025 at p. 1).

[37] R. Doc. 23-1, ¶ 3(a); R. Doc. 23-2, p. 3; R. Doc. 23-5, pp. 2, 25 (listing the Geismar facility as a service location).

> to participate in any benefits or programs offered by Company. Further, Company has no control or involvement in the hiring or firing or direct supervision or direction of any such employees of Contractor. The Work performed under these Commercial Terms is an integral part of and essential to the ability of Company to generate its goods, products, and or services.[38]

Defendant contends that, pursuant to Section 14 of the Commercial Terms, it was Plaintiff's statutory employer when the Accident occurred, such that Defendant is entitled to "the exclusive remedy protection of Louisiana R.S. § 23:1032" against Plaintiff's tort claims.[39] Defendant asserts that many courts have recognized the statutory employer-employee relationship and dismissed claims similar to Plaintiff's claims based on that relationship,[40] including the United States District Court for the Eastern District of Louisiana in *Hodges v. The Mosaic Co*. According to Defendant, *Hodges* also involved employees, like Plaintiff, who were injured while erecting scaffolding in a plant.[41] The court in *Hodges* held that the defendant was the statutory employer of the plaintiffs by virtue of the contract between the plaintiffs' employer and the defendant, and further held that the plaintiffs' work in erecting scaffolding was an integral part of the defendant's ability to generate its products.[42] The court found that the plaintiffs failed to rebut the presumption that the defendant was their statutory employer and immune from tort liability. Defendant similarly argues

---

[38] R. Doc. 23-5, p. 6; R. Doc. 23-1, ¶ 7(a), 8; R. Doc. 23-2, pp. 3-4.

[39] R. Doc. 23-2, p. 4; R. Doc. 23-1, ¶ 8.

[40] R. Doc. 23-2, pp. 7-9, citing *Nielson v. Graphic Packaging Int'l, Inc.,* No. 09-1757, 2011 WL 2462496, at *1 and *5 (W.D. La. June 17, 2011), aff'd, 469 Fed.Appx. 305 (5th Cir. 2012) (granting summary judgment for principal, GPI, and holding that contractor, Konecranes, was the direct employer of the injured employee, and therefore principal GPI, who hired Konecranes, was an LWCA statutory employer immune from the employee's tort claims based on the following contractual language, in effect at the time of the injury-causing accident: "If services are to be performed at [GPI's] facilities in ... Louisiana, it is agreed that pursuant to the provisions of Louisiana Revised Statutes 23:1061(A)(3), that it is the intent and agreement of the parties hereto that the relationship of [GPI] to the direct employees and the statutory employees of [Konecranes] be that of a statutory employer.") and *Rolls on behalf of A. R.,* 34 F.4th at 439-41 (affirming summary judgment for principal, holding that principal was statutory employer of deceased employee due to purchase order's incorporation of terms and conditions entered into by principal and contractor that designated principal a statutory employer).

[41] *Hodges v. The Mosaic Co.,* No. 05-5201, 2007 WL 2008503, at *1 (E.D. La. July 6, 2007), aff'd sub nom. *Hodges v. Mosaic Fertilizer LLC,* 289 Fed.Appx. 4 (5th Cir. 2008).

[42] R. Doc. 23-2, pp. 8-9, citing *Hodges,* 2007 WL 2008503, at *2-3.

that Section 14 of the Commercial Terms, which was specified in a contractual agreement between Defendant and Turner, expressly designated Defendant as Plaintiff's statutory employer, and stated that Turner's work was an integral part of and essential to Defendant's ability to generate its products. Specifically, Defendant alleges that Plaintiff's scaffolding work in the chlorine unit was associated with repair work being performed on a tank within that unit. The chlorine process unit (along with another unit) produces the chemicals that Defendant makes as an integral part of its business at the Geismar facility.[43] Defendant asserts that, like the courts in *Nielson*, *Rolls*, and *Hodges*, this Court should also find that the Commercial Terms create a presumption that Defendant was Plaintiff's statutory employer, and that Plaintiff's work was an integral part of, or essential to, Defendant's ability to generate its products. Defendant argues that Plaintiff's tort claims should be dismissed because Plaintiff cannot overcome the statutory employment presumption.[44]

Plaintiff's Statement of Contested Material Facts ("Plaintiff's Statement") generally asserts that Defendant's declarations are self-serving and improper as summary judgment evidence, and that the MSA and Commercial Terms speak for themselves. Plaintiff's Statement also sets forth a list of eight issues, disputed by Plaintiff (*e.g.*, "Whether [Defendant] had control over the work performed by Turner employees.").[45]

As to the facts, Plaintiff responds that he is not Defendant's employee. Rather, it is Turner that instructed Plaintiff to erect scaffolding in Defendant's chlorine unit, prior to Defendant's cleanup of caustic solution on the floor, so that the unit could be repaired by other Turner employees. Plaintiff contends that, while working to erect the scaffolding, he was forced to walk

---

[43] R. Doc. 23-2, p. 9; R. Doc. 23-5, p. 6; R. Doc. 23-8, ¶¶ 3-5; and *see* R. Doc. 28-2, ¶¶ 3-4.

[44] R. Doc. 23-2, p. 9.

[45] R. Doc. 28-1.

through several inches of the caustic solution, which permeated his work boots and injured his feet. Plaintiff requested new work boots from Turner prior to the Accident, but Turner denied his request.[46]

Plaintiff raises three arguments in response to the Motion. First, Plaintiff asserts that Defendant was not his employer. Rather, and per his Declaration, Plaintiff has worked for Turner as a carpenter periodically since approximately 2016; Turner monitored, controlled, and supervised Plaintiff while on the job; Plaintiff worked with Turner employees; Turner paid Plaintiff and provided Plaintiff with a uniform and protective equipment; and Turner was the only entity who could hire or terminate Plaintiff.[47] Plaintiff contends that Defendant is seeking to label itself as his statutory employer "to escape responsibility for instructing Turner to subject its employees to the caustic solution on the ground in the chlorine unit before [Defendant] cleaned it up and repaired the unit."[48]

Plaintiff next asserts that, for Defendant to be afforded LWCA tort immunity, Turner's work must have been an integral part of Defendant's plant operations as required by La. R.S. § 23:1061. However, to support its allegation that the work was integral, Defendant has only come forward with a self-serving statement in an employee's declaration and one sentence in the Commercial Terms, *i.e.*, Section 14, which fail to rise to the level of summary judgment evidence. Plaintiff contends that whether the work was integral is a question of fact that should be determined at trial.[49]

---

[46] R. Doc. 28, p. 1; R. Doc. 28-2, ¶¶ 4-7.

[47] R. Doc. 28, pp. 2-3; R. Doc. 28-2, ¶¶ 3, 8-10, 12-15.

[48] R. Doc. 28, p. 3.

[49] R. Doc. 28, pp. 3-4.

Plaintiff lastly asserts that the language of the MSA and the Commercial Terms are contradictory, which creates a genuine issue of material fact. Specifically, while the MSA provides that Turner is an independent contractor of Defendant; any person Turner hires is deemed solely Turner's employee; and none of Turner's employees "shall be considered, *for any purpose*, to be an employee, agent, or servant of [Defendant] or its affiliates,"[50] Section 14 of the Commercial Terms contradictorily designates Plaintiff as a statutory employee of Defendant. Plaintiff argues that, through these conflicting provisions, Defendant is attempting to escape liability for Turner's negligence by designating Turner as an independent contractor of Defendant, and also for Defendant's own negligence through Section 14's designation of Defendant as Plaintiff's statutory employer.[51]

Defendant challenges Plaintiff's Statement as non-compliant with Local Civil Rule 56(c) because it fails to state facts and provide record citations. Additionally, Defendant contends that Plaintiff failed to properly contest Defendant's Statement, such that all the facts listed in Defendant's Statement should be deemed admitted pursuant to Local Civil Rule 56(f). Defendant further asserts that none of Plaintiff's arguments defeat summary judgment. As to Plaintiff's argument that he was not Defendant's direct employee, Defendant does not claim worker's compensation exclusivity based on a direct employer-employee relationship with Plaintiff. Defendant contends that issue is not relevant to whether Defendant was Plaintiff's statutory employer because Defendant's statutory employer status is not dependent on whether it controlled Plaintiff's work. Rather, it depends on whether Defendant is named a statutory employer in a contract between Turner and Defendant, as required by La. R.S. § 23:1061(A)(3). Defendant says

---

[50] R. Doc. 28, p. 4, citing R. Doc. 23-4, p. 7 at Section 4.1 (emphasis by Plaintiff) and p. 8 at Section 4.3.

[51] R. Doc. 28, p. 4.

that requirement is met here by Section 14 of the Commercial Terms, which designates Defendant as Plaintiff's statutory employer.[52]

Defendant next replies that, while Plaintiff argues that the Court should reject Defendant's evidence as self-serving and that a question of fact exists as to whether Turner's work was integral to Defendant's business, Plaintiff misunderstands his burden. Under La. R.S. § 23:1061(A)(3), when a contract recognizes the existence of a statutory employment relationship, "there shall be a rebuttable presumption of a statutory employer relationship between the principal and the contractor's employees, whether direct or statutory employees." As Section 14 of the Commercial Terms provides for a statutory employment relationship between Defendant and Turner's employees, there is a rebuttable presumption that such a relationship exists between Defendant and Plaintiff, and it was incumbent upon Plaintiff to rebut that presumption with evidence that "the work is not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services."[53] However, Plaintiff failed to offer any evidence to overcome the presumption in Defendant's favor.

Finally, Defendant asserts that there is no conflict between the independent contractor provision in the MSA and the statutory employer language in the Commercial Terms that creates a genuine issue of material fact. Defendant alleges that Turner's status as an independent contractor is irrelevant to the determination of whether Plaintiff is Defendant's statutory employee, and courts

---

[52] R. Doc. 29, p. 2, citing *Spears v. Exxon Mobil Corporation, et al.*, 2019-0309, pp. 4-5 (La.App. 1 Cir. 12/17/2019), 291 So.3d 1087, 1091-92, *Johnson v. Motiva Enterprises LLC*, 13-305, p. 9 (La.App. 5 Cir. 10/30/2013), 128 So.3d 483, 489-90, and *Bankston v. LSU Health Sciences Center,* 2008-1334 (La.App. 3 Cir. 4/1/09), 7 So. 3d 170, 178.

[53] R. Doc. 29, p. 4, citing La. R.S. § 23:1061(A)(3) and *O'Steen v. Valero Refining-Meraux, LLC,* No. 18-8209, 2019 WL 1572670, at *3 (E.D. La. Apr. 11, 2019) (granting summary judgment to the plant owner defendant, finding that the contract between the plaintiff's employer and the defendant recognized that the defendant was a statutory employer of the plaintiff, which gave rise to the rebuttable presumption that the plaintiff failed to rebut with evidence) and *Manigault v. William Scotsman, Inc.,* No. 23-261, 2023 WL 8813512, at *1 (M.D. La. Dec. 20, 2023) (granting summary judgment to the defendant property owner, who was named a statutory employer of the plaintiff in its services agreement with the plaintiff's employer and which gave rise to a rebuttable presumption that the plaintiff failed to rebut).

have rejected similar arguments, citing, *e.g.*, *Edwards v. Valero Refining-Meraux, LLC,* ("[E]ven if a worker is found to be an independent contractor, he may still be subject to the workers' compensation laws if he is also determined to be a 'statutory employee.'"),[54] *Mitchell v. Southern Scrap Recycling, L.L.C.,* ("The requirements set forth by the legislature for 'statutory employer' status and its resulting liability for workers' compensation benefits and concomitant right to tort immunity have nothing to do with whether or not the injured employee's direct employer was designated as an independent contractor in the contract between the parties."),[55] and *Johnson v. Motiva Enterprises, LLC,* ("[W]e find that the express language of [the parties' contractual statutory employment provision] controls as to whether the appellees are entitled to statutory immunity and that other provisions on different issues are irrelevant in determining the statutory employer status.").[56] Defendant contends that, like the courts in *Edwards*, *Mitchell*, and *Johnson*, this Court should also find that the MSA's independent contractor provision is irrelevant to the issue of Defendant's statutory employer status. Defendant reiterates that the Commercial Terms create a presumption of a statutory employer relationship between Plaintiff and Defendant, which Plaintiff has failed to rebut; therefore, Defendant is entitled to LWCA tort immunity.[57]

---

[54] R. Doc. 29, p. 3, citing *Edwards*, No. 14-772, 2016 WL 355080, at *5 (M.D. La. Jan. 28, 2016) (granting summary judgment for plant owner defendant, whose contract with the plaintiff's employer named defendant a statutory employer) (citing *Mitchell v. Southern Scrap Recycling, L.L.C.*, 2011-2201 (La.App. 1 Cir. 06/08/12), 93 So.3d 754, *writ denied,* 2012-1502 (La. 10/12/12), 99 So. 3d 47) (string cite omitted).

[55] R. Doc. 29, p. 3, citing *Mitchell*, 93 So.3d at 759 (affirming summary judgment for the defendant, who was immune from tort suit as a statutory employer).

[56] R. Doc. 29, p. 3, citing *Johnson,* 13-305 (La.App. 5 Cir. 10/30/13), 128 So.3d 483, 491, writ denied, 2013-2791 (La. 2/14/14), 132 So. 3d 966.

[57] R. Doc. 29, p. 5.

**D. Defendant's Statement of Undisputed Material Facts is Deemed Admitted Pursuant to Local Civil Rule 56(f)**

Local Civil Rule 56(c) provides:

> (c) Opposing Statement of Material Facts. A party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule. Each such statement shall begin with the designation "Admitted," "Denied," or "Qualified" and, in the case of an admission, shall end with such designation. The opposing statement may contain in a separately titled section additional facts, each set forth in a separately numbered paragraph and supported by a record citation as required by subsection (f) of this rule.

Local Civil Rule 56(f) provides:

> Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment.

Plaintiff's Statement fails to comply with Local Civil Rules 56(c) and (f) because it does not respond to each of Defendant's proffered material facts with one of the required designations, *i.e.*, "Admitted," "Denied," *etc*., along with supporting record citations; rather, Plaintiff's Statement only asserts a generalized objection to the quality of Defendant's declarations (*i.e.*, "self-serving") with no explanation, and an assertion that the MSA and Commercial Terms speak for themselves. As these responses are deficient under Local Civil Rule 56(c), Defendant's proffered facts, which are supported by record citations to declarations made under penalty of perjury and contracts authenticated by the declarations, are deemed admitted by operation of Local

Civil Rule 56(f).[58] Further, while Plaintiff was permitted to assert a separate section of additional numbered facts, supported by record citations, Plaintiff's Statement instead proffers a list of disputed issues,[59] which are not facts supported by record citations and will not be considered.[60] Because the Court is entitled to consider record evidence to determine if there is a factual dispute, Plaintiff's Declaration will be considered.[61]

**E. Plaintiff Failed to Come Forward with Summary Judgment Evidence to Rebut the Presumption that Turner's Work was an Integral Part of Defendant's Business**

In light of the foregoing ruling, the following facts are deemed admitted. Defendant and Turner entered into an MSA and Commercial Terms that were in full force and effect at the time of Plaintiff's alleged injury on September 15, 2023.[62] Plaintiff was working for Turner when the Accident occurred,[63] while building scaffolding in Defendant's chlorine process unit in connection

---

[58] *Manigault,* 2023 WL 8813512, at *1 ("Facts contained in a supporting ... statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted.").

[59] Strangely, several of the disputed issues in Plaintiff's Statement appear to contradict affirmative statements in Plaintiff's Declaration. *Compare, e.g*., R. Doc. 28-1, p. 2 ("(7) Who had the obligation to pay Mr. Anthony") *with* R. Doc. 28-2, p. 2 ("13. My wages were paid by Turner and not [Defendant].").

[60] *McGhee v. Fay Servicing, LLC*, No. 21-652, 2023 WL 2335376, at *1 (M.D. La. March 2, 2023) ("Plaintiffs submitted an opposing statement of material facts with their opposition….However, Plaintiffs' opposing statement of material facts does not explain what facts Plaintiffs submit are admitted, denied, or qualified. Further, it does not contain any references by paragraph number to Defendants' statement of facts, nor does it contain any citations to the record to support any of Plaintiffs' factual assertions. Relevant here, Local Rule 56(f) provides: "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, *shall be deemed admitted* unless *properly controverted*." M.D. La. Local Rule 56(f) (emphasis added). As explained above, Defendants properly supported their factual assertions with record citations and Plaintiffs failed to properly controvert them in accordance with the local rules. For this reason, the facts set forth in Defendants' supporting statement of material facts are deemed admitted for summary judgment purposes.") (emphasis added in original).

[61] *McGhee*, 2023 WL 2335376, at *1, citing *Braud v. Wal-Mart Stores, Inc*., No. 17-320, 2019 WL 3364320, at *4 (M.D. La. July 25, 2019) (citing *Smith v. Brenoettsy*, 158 F.3d 908, 910 (5th Cir. 1998) (holding, where plaintiff failed to oppose the motion for summary judgment, that facts in "Statement of Undisputed Facts" were admitted, "except to the extent that the 'facts' in the 'Statement of Undisputed Facts' are contradicted by 'facts' in other materials attached to his motion for summary judgment.") (additional citation omitted).

[62] R. Doc. 23-1, ¶¶ 1-7; R. Doc. 23-4 (Master Services Agreement); R. Doc. 23-5 (Commercial Terms); R. Doc. 23-7 (Second Amendment to Commercial Terms). Plaintiff does not dispute, and disclaims knowledge of, the MSA's terms and the Commercial Terms, which Plaintiff contends speak for themselves. R. Doc. 28, pp. 2-3; R. Doc. 28-2, ¶ 11.

[63] R. Doc. 23-1, ¶ 3(a), 12; R. Doc. 23-3; R. Doc. 23-4, pp. 6-7; R. Doc. 23-5, p. 6.

with repairs to a tank in the unit.[64] Section 14 of the Commercial Terms explicitly designates Defendant as Plaintiff's statutory employer and invokes the protections of the LWCA.[65]

"When the contract recognizes a statutory employer relationship, there shall be a rebuttable presumption of a statutory employer relationship between the principal and the contractor's employees…"[66] Accordingly, and consistent with *Nielson*, *Rolls*, and *Hodges*, Section 14 of the Commercial Terms contains the requisite language under La. R.S. § 23:1061 to create a rebuttable presumption that Defendant is Plaintiff's statutory employer under the LWCA.

Next, "[t]his presumption may be overcome only by showing that the work is not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services."[67] While Plaintiff contends that a question of fact exists regarding whether Turner's work was integral to Defendant's business, Defendant is correct that, once the statutory employer presumption arises, it is Plaintiff who bears the burden to prove that Turner's work was not integral to Defendant's business.[68] Plaintiff failed to rebut the presumption. Plaintiff was required "to produce factual support, sufficient to establish a genuine issue of material fact, proving his work was not an integral part of or essential to" Defendant's business; however, the only evidence provided by Plaintiff is his Declaration, which does not set forth any facts to show

---

[64] R. Doc. 23-1, ¶ 11; R. Doc. 23-8, ¶ 5.

[65] R. Doc. 23-1, ¶¶ 7-8; R. Doc. 23-5, p. 6.

[66] La. R.S. § 23:1061(A)(3).

[67] *Id.*

[68] *Spears,* 291 So.3d at 1094 ("We conclude that ExxonMobil's contract satisfies the requirements of Subsection 23:1061A(3) and gives rise to a rebuttable presumption that ExxonMobil is Spears's statutory employer. **The burden of proof thus shifted to Spears to produce factual support, sufficient to establish a genuine issue of material fact, proving his work was not an integral part of or essential to ExxonMobil's ability to generate its goods, products, or services.** *See* La. Code Civ. Pro. art. 966D(1); *Patterson,* ––– So. 3d at ––––, (2018 WL 1870156); *Mitchell v. Southern Scrap Recycling, L.L.C.*, 11-2201 (La.App. 1 Cir. 6/8/12), 93 So.3d 754, 760, *writ denied,* 12-1502 (La. 10/12/12), 99 So. 3d 47.") (emphasis added).

that the work Plaintiff performed for Turner was not integral to Defendant's business.[69] Plaintiff's unsupported arguments in brief do not create a genuine issue of material fact on this issue.[70]

According to § 23:1061(A)(1), "work shall be considered part of the principal's trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services." In support of the Motion, Defendant introduced the Devall Declaration, which states that the unit in which Plaintiff worked on the date of the Accident to facilitate repairs to a tank produces the chemicals that Defendant manufacturers as part of its business in the Geismar facility. Devall's Declaration, uncontroverted by Plaintiff, is evidence that Plaintiff's work was an integral part of, or essential to, Defendant's production of chemicals.[71] Consistently, Section 14 of the Commercial Terms also states that

[69] R. Doc. 28-2. Rather, Plaintiff's Declaration largely asserts facts to establish that Plaintiff was Turner's employee and that Plaintiff's work was directed by Turner. This is insufficient to rebut the presumption. *See Spears,* 291 So. 3d at 1095 ("Accepting all of the foregoing information as true, none of the evidence rebuts the presumption of statutory employment. To create a genuine issue of material fact, Spears had to present evidence proving that the work he was performing at the time of the accident—the removal of plastic pellets from ExxonMobil's plant—was not an integral part of or essential to ExxonMobil's ability to generate its goods, products, or services. *See* La. R.S. 23:1061A(3). Spears's evidence does not address that issue. Instead, it demonstrates that Poly Trucking's personnel supervised and performed the work. That evidence, alone, does not shed any light on the relationship or significance of the work to ExxonMobil's ability to generate its goods, products, or services.").

[70] *Manigault,* 2023 WL 8813512, at *1 ("This Court has repeatedly admonished that summary judgment is about *evidence*, and a party that fails to direct the Court's attention to any evidence supporting his claims cannot carry his burden of showing a genuine, material dispute (or lack thereof)." (citing *Loolara v. National Flood Insurance Program*, No. 17-953, 2021 WL 3204485, at *2 (M.D. La. July 28, 2021) (quotation marks omitted)) (emphasis in original).

[71] R. Doc. 23-8, ¶¶ 4-5. Plaintiff does not dispute that Defendant is in the business of producing chemicals at the Geismar facility, as attested to in Devall's Declaration. *Id. See also Everett v. Rubicon, Incorporated,* 2004–1988 (La.App. 1 Cir. 6/14/06), 938 So.2d 1032, 1041-43, writ denied*,* 2006–1785 (La. 10/13/06), 939 So.2d 369 (employee was injured in a facility that manufactures the chemical MDI and holding that the injured employee failed to rebut the presumption that his job of breaking up the concrete of support pedals surrounding an amine brine receiver, which, per deposition testimony, was necessary to hold the waste chemicals generated in the MDI production, was an integral part of the facility's operations).

Turner's work at the Geismar facility was an integral part of and essential to Defendant's ability to generate its goods, products, and services.[72] Plaintiff offered nothing to rebut this evidence.[73]

Plaintiff's remaining arguments likewise fail to rebut the presumption. The issue of whether Plaintiff was a direct employee of Defendant or whether Defendant had control over Plaintiff's work is not relevant to Defendant's status as Plaintiff's statutory employer under the LWCA; rather, that determination is governed by La. R.S. § 23:1061(A)(3)'s requirement of a written contract, which is met in this case.[74] Next, there is no conflict between the terms of the MSA and the Commercial Terms that creates a genuine issue of material fact. The law is clear that Turner's status as an independent contractor of Defendant is irrelevant to the issue of Defendant's status as a statutory employer.[75] The MSA's independent contractor provision relates to how Turner as contractor was to *perform its work*,[76] but Section 14 of the Commercial Terms dictates how Defendant was to *remedy an injury* to a statutory employee such as Plaintiff.[77] While Plaintiff asserts that Defendant should not be permitted to disclaim Turner's liability based on Turner's

---

[72] R. Doc. 23-5, p. 6 ("The Work performed under these Commercial Terms is an integral part of and essential to the ability of Company to generate its goods, products, and or services.").

[73] *See Mitchell*, 93 So. 3d at 760 ("Although the Mitchells contend on appeal that a material issue of fact still remains as to whether trucking is an integral part of Southern Scrap Morgan City's business, the evidence they offered in opposition to the motion for summary judgment does not create such an issue of fact and does not rebut the presumption that Southern Scrap Morgan City is Charles's statutory employer.") (citing *Everett,* 938 So.2d at 1043).

[74] *See Johnson,* 128 So.3d at 489 ("The 1997 amendment to La. R.S. 23:1061, which added Subpart (A)(3) and became effective on June 17, 1997, created a presumptive statutory employer status **based on a written contract** between the principal and immediate employer.") (emphasis added) and *Bankston,* 7 So.3d at 178 ("We evaluate the contractual language in the agreement between UMC and LCOA to determine if UMC qualifies as a statutory employer.").

[75] *See Mitchell*, 93 So. 3d at 759 and *Johnson,* 128 So.3d at 491.

[76] R. Doc. 23-4, p. 7 and *see, e.g.,* Section 4.1: "Contractor is an independent contractor, and neither Contractor nor any of its directors, officers, employees, agents, representatives, or permitted subcontractors shall be considered, for any purpose, to be an employee, agent, or servant of Company or its Affiliates. Any provision in this Agreement whereby Company or Company's representatives would otherwise have the right to direct Contractor as to the manner of performing the Work shall be interpreted as meaning that Contractor shall follow the requests by the Company in the results to be achieved and not in the means whereby the Work is to be accomplished."

[77] R. Doc. 23-5, p. 6, Section 14, in pertinent part: "These Commercial Terms recognize that Company shall be considered the statutory employer of Contractor employees and its subcontractors who provide work or services under these Commercial Terms in accordance with Louisiana R.S. 23:1031 or R.S.23:1061. Thus Company is to be granted the exclusive remedy protection of Louisiana R.S.23:1032…."

status as an independent contractor and Defendant's own liability based on its status as a statutory employer, this Court has recognized statutory tort immunity when faced with similar provisions in the face of a similar argument, noting that,

> True, contracts analogous to the Agreement [containing both independent contractor and statutory employer provisions] may appear inconsistent. Yet, so long as they contain a paragraph akin to the one in the Agreement's Exhibit L [containing statutory employer language], courts have consistently ruled that "the Louisiana Worker's Compensation Act provides the exclusive remedy in cases where employees seek damages for injuries that arise out of, and in the course of, employment….'[78]

The Court lastly notes that Plaintiff's Petition only expressly alleges negligence claims against Defendant,[79] and Plaintiff's opposition memorandum does not expressly allege that Turner committed an intentional act to injure Plaintiff (which, if proven, would permit Plaintiff to pursue tort claims against Defendant, even if Defendant were Plaintiff's statutory employer).[80] At most, Plaintiff's opposition contains one sentence alleging that Defendant seeks to call itself Plaintiff's statutory employer "to escape responsibility for instructing Turner to subject its employees to the caustic solution on the ground in the chlorine unit before [Defendant] cleaned it up and repaired

[78] *Edwards,* 2016 WL 355080, at *6, citing *King v. Rubicon LLC,* No. 10-096, 2011 WL 1136487, at *3 (M.D. La. Mar. 25, 2011) and *see Edwards* at *id.,* *3 (rejecting the policy argument that "Defendants should not be able to both deny employee status for 'any purpose', and still benefit from employer immunity.").

[79] R. Doc. 1-2, *see* ¶ 10 (asserting "Defendant's negligent actions") and ¶ 12 (asserting Plaintiff's injuries were caused by "Defendant's negligence"), and *see Edwards,* 2016 WL 355080, at *6 (rejecting Plaintiff's intentional act argument for lack of evidence, and noting that the plaintiffs "made no such claim in any of their three separate complaints").

[80] *See, e.g., Edwards,* 2016 WL 355080 at *6 ("Plaintiffs argue that Valero has failed to prove that its conduct did not amount to intentional injury, a fact which would allow Plaintiffs to sue in tort even if Valero was Johnny's statutory employer. *Maldonado v. Kiewit Louisiana Co*., 2012-1868 (La. App. 1 Cir. 5/30/14), [152 So. 3d 909], writ denied 2014-2246 (La. 01/16/15), 157 So. 3d 1129."). *See also Walker v. Apple Studios Louisiana, LLC,* No. 23-168, 2024 WL 347893, at *4 (M.D. La. Jan. 30, 2024) ("The [intentional act] exception requires that the person acting and causing injury must either: (1) 'consciously desire[ ] the physical result of his act, whatever the likelihood of that result happening from his conduct', or (2) 'know[ ] that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result.' The focus is on the consequences of the act rather than the act itself: 'Only where the actor entertained a desire to bring about the consequences that followed or where the actor believed that the result was substantially certain to follow has an act been characterized as intentional.'") (citations omitted).

the unit."[81] However, that single unsupported allegation is insufficient to establish an intentional act by Defendant to injure Plaintiff.[82]

In summary, Plaintiff has failed to rebut the presumption that Defendant was his statutory employer when he was injured; therefore, Plaintiff's only remedy is under the LWCA. Therefore, Plaintiff's negligence-based tort claims against Defendant fail as a matter of law.

## III. CONCLUSION

Turner was hired by Defendant to perform maintenance work at Defendant's Geismar facility, where Defendant manufactures chemicals in several units. Turner hired Plaintiff to work in the chlorine unit at the Geismar facility. Plaintiff was injured while erecting scaffolding to facilitate repairs to a tank in the unit. Section 14 of the Commercial Terms between Defendant and Turner named Defendant as the statutory employer of Plaintiff and stated that Turner's work was integral and essential to Defendant's business. Section 14 was in effect when the Accident allegedly giving rise to Plaintiff's injuries occurred. Accordingly, there is a rebuttable presumption that Defendant was Plaintiff's statutory employer under La. R.S. § 23:1061(A)(3). Plaintiff failed to come forward with evidence to prove that the work that Plaintiff performed was not an integral part of, or was non-essential to, Defendant's business of manufacturing chemicals, as required by La. R.S. 23:1061(A)(3) to rebut the presumption. Therefore, Defendant is entitled to judgment as a matter of law, dismissing Plaintiff's negligence-based tort claims because Plaintiff's exclusive remedy is under the LWCA.

Accordingly,

---

[81] R. Doc. 28, p. 3.

[82] *Rolls on behalf of A. R.,* 34 F.4th at 441 ("[T]he plaintiff bears the burden of showing a qualifying intentional act, and that burden is steep."). In the parties' Joint Pretrial Order, filed after briefing on the Motion was complete, Plaintiff continues only to assert negligence claims against Defendant. *See* R. Doc. 37, p. 4 ("OxyChem's negligence was a direct and proximate cause of Mr. Anthony's injuries."; p. 5 ("As a result of OxyChem's negligence, Mr. Anthony seeks all damages allowed by law ….").

**IT IS ORDERED** that the Motion for Summary Judgment,[83] filed by Defendant Occidental Chemical Corporation, is **GRANTED, DISMISSING WITH PREJUDICE** all claims of Plaintiff Jamall Anthony in this case.

**IT IS FURTHER ORDERED** that the Clerk of Court shall **TERMINATE** this case, including all pending motions.

Signed in Baton Rouge, Louisiana, September 14, 2026.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

[83] R. Doc. 23.